FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 0 6 2010

P.M. ____
TIME A.M. ____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
NEIL TUCKER,

                              Petitioner,

          — against —

DARWIN LACLAIR,

                              Respondent.
--------------------------------------------------------------------X

**MEMORANDUM and ORDER**

07-CV-1843 (SLT) (RER)

**TOWNES, United States District Judge:**

Neil Tucker ("Petitioner") challenges his convictions for robbery in the first degree and attempted assault in the third degree by petition for the writ of habeas corpus under 28 U.S.C. § 2254. Petitioner alleges a violation of the Constitutional protection against double jeopardy, judicial misconduct, prosecutorial misconduct, and ineffective assistance of appellate counsel. For the reasons stated below, this petition for habeas relief is denied.

## BACKGROUND

On October 19, 2001, fifteen-year-old Alfredo Molina was distributing advertising material for a local car company in Brooklyn, New York. At approximately 8:20 a.m. that morning, Petitioner approached Molina and asked him if he had the time. Alfredo responded that he did not have a watch. At that point, Petitioner pulled out a gun, pressed it into Alfredo's chest and took his wallet and CD player. Alfredo's father, Lucas Molina, then came across Petitioner holding his son at gunpoint. Petitioner then pointed the gun toward Lucas's chest. Both Lucas and Alfredo heard the gun make a noise, as if the trigger had been pulled, but no bullet was discharged. Lucas then took off his belt and hit Petitioner with it.

Petitioner fled the scene and Lucas and Alfredo chased after him. At some point, Lucas confronted Petitioner. Petitioner then pulled out a sharp object described as a knife and swung it

1

at Lucas, cutting his jacket. Petitioner also hit Lucas before again fleeing down an alleyway into a house. The police were called and Petitioner was found hiding inside a bathtub under bags of metal cans. Petitioner was then arrested with Alfredo's CD player and wallet in his possession.

On July 11, 2002, Petitioner was convicted after a jury trial of robbery in the first degree under N.Y. PENAL LAW ("N.Y.P.L.") § 160.15(4) and attempted assault in the third degree under N.Y.P.L. §§ 110.00 and 120.05(2). At trial, Petitioner proceeded *pro se* although the trial court appointed his former attorney, Ivan Vogel, as his legal advisor. On July 29, 2002, the trial court sentenced Petitioner to consecutive terms of ten years' imprisonment for the robbery and two to four years' for the attempted assault. The conviction was affirmed on appeal by the New York Appellate Division in *People v. Tucker*, 798 N.Y.S.2d 910 (N.Y. App. Div. 2005). Petitioner's application for leave to appeal to the New York Court of Appeals was denied on December 5, 2005. *People v. Tucker*, 6 N.Y.3d 760 (2005). By petition dated July 16, 2006, Petitioner sought a writ of error *coram nobis*, claiming ineffective assistance of appellate counsel. The Appellate Division denied the motion on November 8, 2006, *People v. Tucker*, 823 N.Y.S.2d 346 (N.Y. App. Div. 2006), and the Court of Appeals denied leave to appeal that decision on February 22, 2007, *People v. Tucker*, 8 N.Y.3d 885 (2007). Petitioner timely filed a petition for the writ of habeas corpus under 28 U.S.C § 2254.

The Court now reviews the instant petition.

## DISCUSSION

### I.     Standard of Review

A federal court may "entertain an application for a writ of habeas corpus" on behalf of an individual in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. §

2254(a) (1996); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas

review, a federal court is limited to deciding whether a conviction violated the Constitution,

laws, or treaties of the United States."). Under the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), courts will only grant a habeas petition based on a claim that is

"adjudicated on the merits" in state court and the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1) - the "contrary to" clause -- a federal habeas court may grant the writ

"if the state court applies a rule that contradicts the governing law set forth in [Supreme Court]

cases" or "if the state court confronts facts that are materially indistinguishable from a relevant

Supreme Court precedent and arrives at a result opposite" to that reached by the Court. *Bell v.

Cone*, 543 U.S. 447, 452-53 (2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Under § 2254(d)(2) - the "unreasonable application" clause -- a federal habeas court may grant

the writ if the state court "'identifies the correct governing legal principle from this Court's

decisions but unreasonably applies that principle to the facts' of the petitioner's case." *Rompilla

v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).

Accordingly, "a federal habeas court may not issue the writ simply because that court concludes

in its independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly. Rather that application must also be unreasonable."

*Williams v. Taylor*, 529 U.S. 362, 411 (2000).

## II.    Double Jeopardy

Petitioner first contends that the state trial court violated his constitutional right not to be twice placed in jeopardy.[1] The goal of the Double Jeopardy Clause is to prevent against a second prosecution for the same offense after acquittal. *Price v. Vincent*, 538 U.S. 634, 641(2003). Petitioner alleges that the trial court dismissed a count at the close of the prosecution's case then submitted the same count to the jury, in violation of the guarantee against double jeopardy. The record fails to support Petitioner's claim and it is denied.

In this case, Petitioner was charged, *inter alia*, with two counts of robbery in the first degree under N.Y.P.L. § 160.15(3) & (4), and attempted assault in the second degree under N.Y.P.L. §§ 110.00 and 120.05(2). At the close of the prosecution's case, the trial court ruled that the prosecution made their *prima facie* case and that the prosecution offered sufficient evidence to send "each and every count in the indictment" to the jury. Trial Tr. 415: 14-19. The trial court, however, reserved judgment on the question of whether every count would be submitted to the jury. *Id.* at 415: 25 – 416: 1-2. After expressing some concerns about jury confusion with two robbery in the first degree counts involving the handgun and the knife, the trial court ruled that both counts would be submitted to the jury. *Id.* at 416:4 – 421:3.

Nevertheless, with respect to the robbery in the first degree count predicated on the handgun, the trial court *sua sponte* noted that an affirmative defense for an inoperable gun would reduce the count to second degree robbery. *See* N.Y.P.L. § 160.15(4) ("[I]t is an affirmative defense that such [firearm] was not a loaded weapon from which a shot, readily capable of

---

[1] Petitioner presented his double jeopardy, judicial misconduct and prosecutorial misconduct claims to the Appellate Division in his *pro se* supplemental brief. *See* Ex. F, Supplemental Br. for Appellant. The Appellate Division ruled that the claims were "not properly before th[e] court, unpreserved for appellate review, or without merit." *Tucker*, 798 N.Y.S.2d at 910. The Court deems the claims "adjudicated on the merits" for AEDPA purposes. *See, e.g., Ryan v. Miller*, 303 F.3d 231, 245-46 (2d Cir. 2002) (finding that a "blanket statement" that "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit" constituted adjudication on the merits).

producing death or other serious physical injury, could be discharged."). The trial court opined

that evidence supported the affirmative defense, but was concerned that, if the inoperable gun

instruction was given, it would undermine Petitioner's sole defense of mistaken identity. The

trial court stated, "If I give the affirmative defense, it presupposes the defendant was there, he

just used the gun that was inoperable. . . ." Trial Tr. 422: 2-4. Speaking to Petitioner's legal

advisor, the trial court continued,

> Counsel, what I am saying, if I give robbery in the first degree, displays what
> appears to be a gun, in defense, affirmative defense of that case the gun was
> inoperable and we clearly have both witnesses saying he pointed the gun, it went
> off and nothing happened, the operability or inoperability of the gun is established
> right there.
>
> However, if I give the affirmative defense in response to that on that basis, it
> undercuts this whole notion of misidentification, it puts him here and mitigates
> the first degree robbery down to second degree, okay, he did the robbery.
>
> I want you and Mr. Tucker to think about it because it presupposes he was there
> but didn't have a real gun.

*Id.* at 422: 12-23; 423: 4-6. In response, Petitioner's legal advisor stated that they did not want

the affirmative defense/second degree robbery charge submitted to the jury. *See id.* at 423: 7

("Mr. Vogel: We don't want the charge."); *id.* at 423: 18-19 ("The Court: And no affirmative

defense. Mr. Vogel: Right."). After reviewing, *People v. Maldonado*, 175 A.D.2d 698, 573

N.Y.S.2d 662 (N.Y. App. Div. 1991), a case reversing a trial judge's submission of the

affirmative defense in a first degree robbery case where the defendant interposed a mistaken

identification defense, Petitioner himself agreed that the inoperable gun instruction should not be

read to the jury. *See* Trial Tr. 425:2-5 ("The Court: You have now seen the case, you still agree

[the affirmative defense] shouldn't be given, Mr. Tucker, do you understand? Mr. Tucker:

Yes."). The first degree robbery charge was then submitted to the jury without the affirmative

defense instruction.

The Court reads Petitioner's double jeopardy claim to allege that the trial court submitted the first degree robbery charge to the jury after finding that the evidence only supported a second degree count. Nevertheless, Petitioner's claim mistakenly confuses the trial court's discussion of the *submission* of a robbery in the second degree instruction with the *finding* that the evidence did not support the first degree charge. Foremost, the trial court never made a finding that the evidence was insufficient to support a finding of guilt of robbery in the first degree. On the contrary, the trial court expressly ruled that the evidence was legally sufficient to submit *all* counts to the jury. Instead, the trial court merely pointed out to Petitioner that because the evidence in the case could establish that the gun used in the robbery was inoperable, he could elect to have robbery in the second degree submitted to the jury as a lesser-included offense. The trial court warned that such an instruction would undermine Petitioner's defense of mistaken identity since it would presuppose that he committed the robbery.

Thus, the trial court never ruled that the evidence was legally insufficient to establish robbery in the first degree to terminate jeopardy on the count and only found that eyewitness testimony raised the possibility of an affirmative defense based on "the operability or inoperability of the gun." *See* Trial Tr. 422: 17-18. Consequently, although the trial court indicated Petitioner was entitled to the lesser-included instruction, both Petitioner and his legal advisor agreed that the affirmative defense instruction should not be given based on their defense strategy and consented to the robbery in the first degree charge being sent to the jury. *Id.* at 423: 7; 423: 18-19; 425:2-5.

Under these circumstances, no double jeopardy violation occurred. A judge's comments must be "sufficiently final to terminate jeopardy." *Price*, 538 U.S. at 642. Here, no statement, formal judgment or order from the trial court contained the requisite degree of clarity and

specificity to render the robbery in the first degree charge legally insufficient. *See id.* at 642-43.

In fact, the trial court never even attempted to terminate jeopardy on any charge. Indeed,

Petitioner never requested the second degree lesser-included charge and specifically instructed

the trial court he did not want the charge given. Thus, Petitioner's ultimate conviction for

robbery in the first degree was neither contrary to nor an unreasonable application of clearly-

established Federal law.

## III.    Judicial Misconduct

Petitioner next questions the state trial court's impartiality during his trial and alleges

judicial misconduct. Petitioner asserts that the "record is riddled with threats, unnecessary

interruptions and out right [sic] belittling comments that would lead anyone to believe, especially

a jury, that the judge favored the prosecution's case." Pet. Reply Br. 22. The record reveals no

such prejudice on the part of the trial court.

Reversal based on the trial court's conduct is only warranted if "the judge's behavior was

so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial." *United States v.*

*Amiel*, 95 F.3d 135, 146 (2d Cir. 1996) (internal quotation marks and citation omitted); *see also*

*Moreno v. Kirkpatrick*, No. 06-CV-2136, 2010 WL 1223121, at *12 (E.D.N.Y. Mar. 23, 2010).

The issue is not "whether the trial judge's conduct left something to be desired, or even whether

some comments would have been better left unsaid." *Amiel*, 95 F.3d at 146 (internal quotation

marks and citation omitted). The question is "whether the jury was so impressed with the

judge's partiality to the prosecution that it became a factor in determining the defendant's guilt,"

or "whether it appear[ed] clear to the jury that the court believe[d] the accused is guilty." *Id.*

(internal quotation marks and citation omitted). Indeed, "habeas relief on the ground of judicial

misconduct at the state trial level is warranted only if the federal court determines that the

alleged improprieties, taken in the context of the total trial, undermined fundamental fairness to the defendant." *Salahuddin v. Strack*, No. 97-CV-5789, 1998 WL 812648, at *8 (E.D.N.Y. Aug. 12, 1998).

A review of the trial record indicates that the trial court's conduct never approached the level of impropriety that would constitute a deprivation of Petitioner's right to fundamental fairness. As examples of "belittling" comments, Petitioner cites the trial court's statements such as: "You cannot do that," Trial Tr. 98:24; "No, no sir, ask the question," *id.* at 120:4; "Just a moment, irrelevant, irrelevant," *id.* at 128:8-9; and "You are not going to ask that question in that fashion," *id.* at 345:4-5. These and similar statements fall far short of "belittling" comments and reflect common-place rulings of trial judges in the heat of a trial.

In another example, Petitioner objects to the trial court's statement, "I will shut you down." *Id.* at 361: 11-12. Nevertheless, in context, the trial court's statement was not improper. In the case, Petitioner began to question a witness about a document not in evidence. *Id.* at 361:3-5. The trial court then stated, in the hall out of the presence of the jury, "What you want to do is argue something that is not in evidence. I will shut you down if you don't do it appropriately." *Id.* at 361: 11-12.

Petitioner also questions the trial court's comment that, "I will embarrass you in there, I don't care what the Appellate Division does." *Id.* at 455: 19-21. Placed in context, the statement reveals no undue prejudice. During summation, Petitioner mentioned that he had "never been on trial before," which the trial court and prosecution found to incorrectly imply that he had no prior criminal record. 454:24-25. Recognizing this problem, the trial court again brought the parties to the hall out of the presence of the jury and admonished Petitioner,

> Young man, no matter how I try to be reserved with you, no matter how I had
> tried to give you a fair trial you pushed the envelope, then you turn around and

8

tell me 'Judge, I never been on trial before' . . . . I guess the implication is you have no criminal record. If I were a mean spirited judge, I'd open this case up and allow them to put something in evidence. * * * If you keep going on the way you are going I will embarrass you in there, I don't care what the Appellate Division does.

*Id.* at 455: 6-11, 19-21. The trial court then permitted a curative instruction to be read to the jury. Furthermore, as the trial court's comments all took place outside of the presence of the jury, they cannot be characterized as so prejudicial as to infect the fairness of proceedings.

Petitioner also argues that the trial court's attacked his credibility. In one instance, Petitioner responded to a witness's answer with the irrelevant question, "Do you understand you are under oath, sir?" *Id.* at 143:8. The trial court warned, "I don't understand what the purpose of that question is, let's not make this like television, this is not theatrical please. The jurors will disregard the theatrics." *Id.* at 143:10-13. This comment and the others cited by Petitioner above were within the bounds of judicial discretion given Petitioner's breach of the rules of evidence.

Trial is not for the thin-skinned. Judges often make rulings that displease one party or the other and that alone cannot be taken as a sign of prejudice. Because the balance of rulings tend to favor one party does not necessarily reflect the judge's partiality to that side. Here, Petitioner represented himself *pro se* and clearly did not understand trial procedures, rules of evidence, and the boundaries of proper representation. The trial court demonstrated commendable patience with Petitioner and acted well within judicial discretion to manage the proceedings. While the trial court was required to admonish Petitioner on numerous occasions, the trial court's commentary presented nothing more than ordinary attempts to guide the course of the proceedings and to clarify the record to further the truth-finding function of the trial. Under the circumstances, the alleged improprieties, taken in the context of the total trial, did not come close

9

to undermining the fundamental fairness to Petitioner. Accordingly, the state court's determination of this claim was neither contrary to nor an unreasonable application of clearly-established Federal law.

## IV. Prosecutorial Misconduct

Next, Petitioner asserts that prosecutorial misconduct denied him a fair trial. He alleges that the prosecutor denigrated the defense, called him a liar, shifted the burden of proof, vouched for the complainants' credibility, appealed to the jury's fears and sympathy, and argued the law. None of these alleged instances of misconduct caused Petitioner substantial prejudice.

The scope of habeas review for allegations of prosecutorial misconduct is "quite limited." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998). Habeas relief will not issue on the basis of a prosecutor's improper remarks unless the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also United States v. Newton*, 369 F.3d 659, 680 (2d Cir. 2004) (noting the heavy burden imposed on a habeas petitioner asserting prosecutorial misconduct). In order for prosecutorial misconduct to rise to the level of constitutional error, the prosecutor's comments must constitute "more than mere trial error." *Tankleff*, 135 F.3d at 252. "[I]t is not enough that the prosecutor['s] remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 181 (internal quotation marks and citation omitted). The petitioner must additionally establish "that he suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict." *Tankleff*, 135 F.3d at 252 (quoting *Bentley v. Scully*, 41 F.3d 818, 823 (2d Cir. 1994)) (internal quotation marks omitted).

In his supplemental *pro se* brief to the Appellate Division, Petitioner contends that the prosecutor shifted the burden of proof and called him a liar based on summation marks such as the following. "[H]e would have you believe that he was inside of that garage at the time victim number one was robbed . . . ." Trial Tr. 466:25 – 467: 3. "[H]e wants you to believe this is all one big mistake." *Id.* at 468: 2-3. "[T]he fact that he is hiding in that bathtub, think to yourself, are these the acts of a deceptive person? Are these acts of somebody trying to hide from the police?" *Id.* at 482: 17-20. The prosecutor then outlined three "deceptive" acts attributed to Petitioner. *Id.* at 482: 21-24; 483: 13-15; 483: 23-25. "Does that sound like an act of an innocent man[?]" *Id.* at 483: 25 – 484: 1.

> Now the defendant has already conceded a crime occurred, there is no question, there is nothing for you to deliberate on, the crime, it is already conceded but I will take you through now, slowly each piece to show you why there is no mistake that it was this defendant. . . .

*Id.* at 469:14-19.

These comments were well within the bounds of permissible prosecutorial rhetoric. The prosecutor never called Petitioner a "liar." He simply characterized some of Petitioner's acts as "deceptive" – properly attempting to demonstrate Petitioner's consciousness of guilt. Furthermore, the prosecutor's phrase, "he wants you to believe," followed accurate portrayals of Petitioner's version of facts which he was asking the jury to accept. Finally, the prosecutor's statements regarding the need to only focus or deliberate on the issue of identification correspond to Petitioner's sole defense of mistaken identity. Accordingly, these and similar remarks by the prosecutor were not improper.

Petitioner also accuses the prosecutor of improperly vouching for the complainants' credibility. Petitioner complains of statements such as the following.

> I agree about mistake, it wasn't Alfredo Molina's mistake. It wasn't Lucas Molina's mistake and it wasn't the police, it was the defendant, Neil Tucker, who made the mistake. *** He made a mistake when . . . he chose two victims, not one, two, Alfredo and Lucas, his father, two people that will remember him, see him, see his face and be able, I believe, to identify him moments later to the police.

*Id.* at 468:4-8, 15-22. "[Y]ou saw the witness[es] testify, did they look like somebody that was not going to be truthful, a 15 year old boy?" *Id.* at 488:24 – 489:1. "Does [Lucas Molina] look like he is not going to be a truthful person about the item displayed[?]" *Id.* at 489: 7-8.

"It is well established that prosecutors may not 'vouch for their witnesses' truthfulness.'" *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (quoting *United States v. Modica*, 663 F.2d 1173, 1179 (2d Cir. 1981)). Nevertheless, "the government is allowed to respond to an argument that impugns its integrity or the integrity of its case." *Id.* (internal quotation mark omitted). In this case, Petitioner's sole defense was mistaken identity. The premise of Petitioner's defense thus attacked the accuracy or truthfulness of the complainants' testimonies. In response, the prosecutor properly invited the jury to evaluate the two witnesses, assess their demeanor, and decide whether to believe them. Accordingly, the prosecutor's comments were a legitimate reply to Petitioner's defense and, in any case, did not rise to the level of substantial prejudice.

Petitioner next asseverates that the prosecutor inappropriately appealed to the jury's fear and sympathy. Petitioner cites two statements from the prosecutor's summation. First, the prosecutor stated with respect to the two complainants that, "they are running for their lives, running for their lives until this person takes off and they start chasing after him until he takes that belt off and starts going after him with the belt does the table turn." Trial Tr. 475: 16-20. Second, the prosecutor argued, "look at the defendant, his face is not a face that is easily

forgotten. It is distinctive, you would remember this face if this person is talking to you, especially if this person robs you, but I will continue." *Id.* at 471: 11-16.

While the first comment is phrased in a melodramatic fashion, it largely reflects the evidence presented at trial. Additionally, the second comment demonstrates the well-worn prosecutorial tactic of appealing to a juror's common sense and experiences. Although these comments may contain some undesirable embellishment and flourish, they did not so cross the line to infect Petitioner's trial with substantial prejudice.

Finally, Petitioner maintained that the prosecutor "argu[ed] the law" in stating "all I have to prove . . . was a forcible taking, the taking of property and during the commission of the crime or immediate flight therefrom that['s] the key words, 'immediate flight therefrom[.]'" *Id.* at 489: 22 – 490: 1. The trial court overruled Petitioner's objection at trial stating, "As you recall, you were aware of the court's charges, the court referred to that, they will take the law from me." *Id.* at 490:7-9. Given the trial court's ruling, nothing shows any misconduct in this statement by the prosecution.

For these reasons, the state court's adjudication of Petitioner's prosecutorial misconduct claim was neither contrary to nor an unreasonable application of clearly-established Federal law.

## V.     Ineffective Assistance of Appellate Counsel

Petitioner finally contends that his appellate counsel was ineffective because he failed to argue that the trial court's instruction to the jury regarding Petitioner's assertion that he had never been on trial before was improper. Petitioner raised this claim in his *coram nobis* petition and the Appellate Division rejected it on the merits. *See Tucker*, 823 N.Y.S.2d at 346. The Court agrees this claim is meritless.

In addressing ineffective assistance of appellate counsel, courts utilize the same *Strickland* two-pronged test that is used in cases alleging ineffective assistance of trial counsel. *See Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992). A petitioner may establish ineffective assistance by demonstrating that counsel failed to raise significant and obvious issues and instead chose to set forth significantly weaker arguments. *See Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000). Nevertheless, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Id.* (citing *Jones*, 463 U.S. at 754). Consequently, when reviewing the performance of appellate counsel, courts should refrain from "second-guess[ing] reasonable professional judgments and impos[ing] on . . . counsel a duty to raise every colorable claim on appeal." *Jackson*, 162 F.3d at 85 (internal quotation marks and citation omitted).

Here, Petitioner complains that his appellate lawyer should have attacked the trial court for giving the following instruction:

> Ladies and gentlemen, I had to interrupt the defense's summation because of something that the defendant stated during his summation.
> It was asserted or stated that he has never been on trial before. Now there is no evidence of that before you and it should be disregarded. I would also like to inform you, however, there are several alternatives when someone is charged with a crime, a dismissal, a plea and there is trial.
> In any event, you are not to speculate on the possible existence or non existence of facts which are not presented here at trial. Leave speculation out of your deliberations entirely, that includes lawyers in their summation try to offer evidence that did not occur during the course of the trial[.]

Trial Tr. 462: 16 – 463: 7. As stated above, this curative instruction was given in response to Petitioner's statement that he had "never been on trial before," *id.* at 454:24-25, which the trial court and prosecutor construed as an attempt to inaccurately imply he had no prior criminal history.

Petitioner maintains that the instruction left the jury with the impression that he has a criminal history and that it undermined his presumption of innocence. The Court disagrees. As a reading of the instruction shows, it was a neutral charge designed to cure the problem of Petitioner's false implication that he had no criminal record without informing the jury that Petitioner was affirmatively being deceptive. Such an instruction clarified what was in evidence and what was not and it reminded the jurors of their obligation to only consider what was in evidence and leave speculation out of deliberations. While the necessity of the instruction was unfortunate, the trial court adopted a reasonable course of action in light of Petitioner's manifest error.

Accordingly, this claim was not a significant and obvious issue for appeal and Petitioner's appellate counsel did not fall below an objective standard of reasonableness in failing to bring it before the Appellate Division. Moreover, given the totality of evidence against Petitioner, including the testimony of two complainants, any error based on this curative instruction would not have altered the outcome of his trial. Consequently, the state court's resolution of this claim was neither contrary to nor an unreasonable application of clearly-established Federal law.

15

## CONCLUSION

For the foregoing reasons, Petitioner's petition for the writ of habeas corpus is denied.

Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C.

§ 2253(c)(2), so a certificate of appealability will not issue. *See Lucidore v. N.Y.S. Div. of*

*Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies for purposes of 28 U.S.C. §

1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith.

**SO ORDERED.**

/s/
_____

SANDRA L. TOWNES
United States District Judge

Dated: August 3, 2010
      Brooklyn, New York